TROY LAW, PLLC
*Attorneys for the Plaintiffs, proposed FLSA*
*Collective and potential Rule 23 Class Plaintiffs*
John Troy (JT 0481)
41-25 Kissena Boulevard, Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
johntroy@troypllc.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

| | |
|---|---|
| WEI JIE YU,<br>SEE LIANG KWA, and,<br>JOSHI DHARM RAJ,<br>*on behalf of themselves and others similarly situated,* | |
| Plaintiffs, | Case No. 21-cv-02103 |
| v. | 29 U.S.C. § 216(b) COLLECTIVE ACTION & FED. R. CIV. P. 23 CLASS ACTION |
| BEY UNITED, LLC<br>        d/b/a Kotobuki<br>        d/b/a Kotobuki-Manhattan,<br>BON KOO<br>        a/k/a Bon S. Koo,<br>ALLEN YEN,<br>JASON KIM, and<br>YOUNG KOO, | JURY TRIAL DEMANDED<br><br>**COMPLAINT** |
| Defendants. | |

-----------------------------------------------------------------x

Plaintiffs WEI JIE YU (hereinafter "Yu"), SEE LIANG KWA (hereinafter "Kwa"), and

JOSHI DHARM RAJ (hereinafter "Raj") (collectively hereinafter "Plaintiffs"), on behalf of

themselves and others similarly situated, by and through their attorney, Troy Law, PLLC, hereby

bring this complaint against Defendants BEY UNITED, LLC d/b/a Kotobuki d/b/a Kotobuki-

Manhattan (hereinafter the "Entity Defendant" or "Bey United"), BON S. KOO (hereinafter "Bon

Koo"), ALLEN YEN (hereinafter "Yen"), JASON KIM (hereinafter "Kim"), and YOUNG KOO

(hereinafter "Young Koo") (hereinafter collectively the "Individual Defendants") (hereinafter

collectively with the Entity Defendant the "Defendants"), and allege as follows:

**INTRODUCTION**

1.      This action is brought by Plaintiffs, on behalf of themselves as well as other similarly situated employees against Defendants for alleged violations of the Fair Labor Standards Act, ("FLSA") 29 U.S.C. § 201 *et seq.* and of the New York Labor Law ("NYLL"), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, minimum wage and overtime compensation for all hours worked over forty (40) each workweek.

3.      Defendants willfully failed to record all of the time that Plaintiffs and similarly situated employees work or worked, including all work done in excess of forty hours each week.

4.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid overtime wages, (2) liquidated damages, (3) prejudgment and post-judgment interest; and/or (4) attorneys' fees and costs.

5.      Plaintiffs further allege pursuant to NYLL § 650 *et seq*. and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation, (2) unpaid overtime compensation, (3) unpaid "spread of hours" compensation, (4) liquidated damages equal to the sum of unpaid minimum wage, unpaid overtime, unpaid "spread of hours," in the amount of twenty five percent under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (5) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (6) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number,

employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (7) 9% simple prejudgment interest provided by NYLL, (8) post-judgment interest, and (9) attorney's fees and costs.

## JURISDICTION AND VENUE

6.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

7.      This Court has jurisdiction over state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

8.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Ben Koo conducts business in this District, and some of the acts and omissions giving rise to the claims herein alleged took place in this District.

9.      Yu and Kwa are plaintiffs pursuing claims under the Fair Labor Standards Act (Yu is also pursuing claims under the New York Labor Law) in the consolidated cases *Yu v. Kotobuki Restaurant, Inc.*, No. 17-cv-04202 (JMA) (AYS) and *Yu v. Kim*, No. 18-cv-07001 (JMA) (AYS), both proceeding in the United States District Court for the Eastern District of New York, against Kotobuki Restaurant, Inc., Kotobuki Roslyn, Inc., Kotobuki Babylon, Inc., Kotobuki Manhattan, Inc., Kotobuki Management, Inc., Eric Kim, and Yoshihiro Narita.

## PLAINTIFFS

10.     Yu was employed by Defendants to work as a sushi chef at the restaurant Kotobuki-Manhattan, 56 Third Avenue, New York, NY 10003.

11.     Kwa was employed by Defendants to work as a sushi chef at the restaurants: Kotobuki-Roslyn, 1530 Old Northern Boulevard, Roslyn, NY 11576; Kotobuki-Hauppauge, 377 Nesconset

Highway, Hauppauge, NY 11788, and Kotobuki-Manhattan, 56 Third Avenue, New York, NY 10003.

12.     Raj was employed by Defendants to work as a busser at Kotobuki-Manhattan.

## **DEFENDANTS**

*Entity Defendant*

13.     Entity Defendant is a domestic limited liability company organized under the laws of the State of New York with a principal place of business at 56 Third Avenue, New York, NY 10003 and a registered address for service of process at 174 Morton Boulevard, Plainview, NY 11803.

14.     Entity Defendant is a business engaged in interstate or international commerce.

15.     Entity Defendant purchases and sells goods moved in interstate or international commerce, including but not limited to alcoholic beverages and sushi ingredients

16.     Entity Defendant is, upon information and belief, had gross sales in excess of $500,000.00 per year during the period relevant to this lawsuit.

17.     Entity Defendant is part of a chain of Kotobuki restaurants that together had gross sales in excess of $500,000.00 per year during the period relevant to this lawsuit.

*Entity Non-Defendants*

18.     Kotobuki Restaurant, Inc. operates Kotobuki-Hauppauge at 377 Nesconset Highway, Hauppauge, NY 11788.

19.     Kotobuki Roslyn, Inc. operates Kotobuki-Roslyn at 1530 Old Northern Boulevard, Roslyn, NY 11576.

20.     Kotobuki Babylon, Inc. operates Kotobuki-Babylon at 86 Deer Park Avenue, Babylon, NY 11702.

21.     Kotobuki Manhattan, Inc. operated Kotobuki-Manhattan until about mid-2016; since about mid-2016, Kotobuki Manhattan has been operated by the Entity Defendant.

22. Kotobuki Management, Inc. owns the premises—86 Deer Park Avenue, Babylon, NY 11702—used by Kotobuki Babylon, Inc. to operated Kotobuki Babylon, but does no business other than receive rent payments from Kotobuki Babylon, Inc. and pay a salary to Yoshihiro Narita, its sole owner.

23. Kotobuki Restaurant, Inc., Kotobuki Roslyn, Inc., Kotobuki Babylon, Inc., Kotobuki Manhattan, Inc., and Kotobuki Management, Inc. are all named as Defendants in *Yu v. Kotobuki Restaurant, Inc.*, No. 17-cv-04202 (JMA) (AYS).

### *Individual Defendants*

24. The Individual Defendants are members of the Entity Defendant.

25. Being among the ten largest members of the Entity Defendant, the Individual Defendants are individually responsible for unpaid wages under the New York Limited Liability Company Law.

26. Bon Koo has a 20 percent ownership interest in the Entity Defendant, has bound the Entity Defendant in contracts, and has the authority to hire and fire employees of the Entity Defendant.

27. Additionally, Bon Koo is a part-owner of Kotobuki Restaurant, Inc., Kotobuki Roslyn, Inc., and Kotobuki Babylon, Inc., and had the authority to hire and fire employees at Kotobuki-Hauppauge, Kotobuki-Roslyn, and Kotobuki-Babylon.

28. Bon Koo is a principal named on the liquor license for Kotobuki-Manhattan since June 23, 2016 and had authority over the premises of Kotobuki-Manhattan at 56 Third Avenue, New York, NY 10003, and authority to supervise employees therein.

29. Yen is a member of Entity Defendant, with up to a 40 percent ownership interest, and is a principal named on the liquor license for Kotobuki-Manhattan since June 23, 2016 and had authority over the premises of Kotobuki-Manhattan at 56 Third Avenue, New York, NY 10003, and authority to supervise employees therein.

30.     Kim is a member of Entity Defendant, with up to a 40 percent ownership interest, and is a principal named on the liquor license for Kotobuki-Manhattan since June 23, 2016 and had authority over the premises of Kotobuki-Manhattan at 56 Third Avenue, New York, NY 10003, and authority to supervise employees therein.

31.     Young Koo is a member of Entity Defendant, with up to a 40 percent ownership interest, and is a principal named on the liquor license for Kotobuki-Manhattan since June 23, 2016 and had authority over the premises of Kotobuki-Manhattan at 56 Third Avenue, New York, NY 10003, and authority to supervise employees therein.

***Individual Non-Defendants***

32.     Eric Kim is another member of the Entity Defendant, with a 20 percent ownership interest, named as a principal on the liquor license for Kotobuki-Manhattan since June 23, 2016, has authority to hire and fire employees of the Entity Defendant, determined the wage rates for employees of the Entity Defendant, distributed pay to employees of the Entity Defendant, and kept and maintained employee records for the Entity Defendant.

33.     Entity Defendant's registered address for service of process is Eric Kim's home address.

34.     Eric Kim is also a part-owner of Kotobuki Restaurant, Inc., Kotobuki Roslyn, Inc., and Kotobuki Babylon, Inc., and had the authority to hire and fire employees, determined the wage rates for employees, distributed pay to employees, and kept and maintained employee records at Kotobuki-Hauppauge, Kotobuki-Roslyn, and Kotobuki-Babylon.

35.     Eric Kim is named as a Defendant in *Yu v. Kim*, No. 18-cv-07001 (JMA) (AYS).

36.     Yoshihiro Narita is another member of the Entity Defendant, with a 20 percent ownership interest, named as a principal on the liquor license for Kotobuki-Manhattan since June 23, 2016, and has authority to hire and fire employees of the Entity Defendant.

37.     Yoshihiro Narita is also a part-owner of Kotobuki Restaurant, Inc., Kotobuki Roslyn, Inc.,

and Kotobuki Babylon, Inc., and had the authority to hire and fire employees, determined the wage rates for employees, distributed pay to employees, and kept and maintained employee records at Kotobuki-Hauppauge, Kotobuki-Roslyn, and Kotobuki-Babylon.

38.    Yoshihiro Narita is also the sole owner of Kotobuki Management, Inc.

39.    Yoshihiro Narita is named as a Defendant in *Yu v. Kotobuki Restaurant, Inc.*, No. 17-cv-04202 (JMA) (AYS).

## STATEMENT OF FACTS

*Entity Defendant Constitutes an Enterprise with Kotobuki Restaurant, Inc., Kotobuki Roslyn, Inc., Kotobuki Babylon, Inc., and Kotobuki Management, Inc.*

40.    Entity Defendant, Kotobuki Restaurant, Inc., Kotobuki Roslyn, Inc., Kotobuki Babylon, Inc., and Kotobuki Management, Inc. concurrently operate a group of Japanese restaurants doing business under the name "Kotobuki," to wit, Kotobuki-Hauppauge, Kotobuki-Roslyn, Kotobuki-Babylon, and Kotobuki-Manhattan.

41.    At all relevant times herein, Entity Defendant, Kotobuki Restaurant, Inc., Kotobuki Roslyn, Inc., Kotobuki Babylon, Inc., and Kotobuki Management, Inc. were, and continue to be, a single enterprise and employer with a high degree of interrelated and unified operation, common ownership in the persons of Koo, Eric Kim, and Yoshihiro Narita, common management in the persons of Koo, Yoshihiro Narita, and especially Eric Kim, centralized control of labor relations conducted by Eric Kim, common control by Koo, Yoshihiro Narita, and especially Eric Kim, a common business purpose, and interrelated business goals.

42.    The Kotobuki restaurants frequently transfer employees and materials among themselves. When one Kotobuki restaurant was shorthanded, Eric Kim would assign one or more employees from another Kotobuki restaurant to help out. And when one Kotobuki restaurant ran out of materials used in the preparation of food or cleaning of the restaurant, Eric Kim would send over

materials from another location.

43.    Kotobuki's website, http://www.kotobukirestaurants.com/, presents all four Kotobuki locations side by side and as part of a single enterprise.

44.    Customers wishing to order delivery are encouraged to call their nearest Kotobuki and order off a common menu, which is presented here: http://www.kotobukirestaurants.com/wp-content/uploads/2016/08/KotobukiMenuTabloid_2016_7.20.pdf.

**_Defendants Committed the Following Alleged Acts Knowingly, Intentionally and Willfully against the Plaintiff, the FLSA Collective Plaintiffs, and the Class_**

45.    At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees at least the New York minimum wage for each hour worked.

46.    While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

47.    At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees their lawful overtime of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

48.    At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees their lawful spread of hours for workdays that began and ended ten (10) hours apart.

49.    At all relevant times, Defendants knowingly and willfully failed to keep full and accurate records of Plaintiffs' hours worked and wages paid.

50.    At all relevant times, Defendants maintained a computerized time keeping system. At all relevant times, Defendants required Plaintiffs and similarly situated employees to enter the times they started to work, at the times they started to work. However, when employees finished working,

they were required to enter a finishing time that was a set interval apart from their start time, rather than the actual time they finished work.

51.     Plaintiffs were required to report that they worked four (4) hours for the morning shift Mondays through Fridays, six (6) hours for the evening shift Sundays through Thursdays, six and one half (6.5) hours for the evening shift on Fridays, and seven (7) hours for the evening shift on Saturdays.

52.     Defendants failed to keep full and accurate records in order to mitigate liability for wage violations.

53.     At all relevant times, Defendants knowingly and willfully failed to furnish Plaintiffs and similarly situated employees notice that they were claiming tip credit towards Plaintiffs' and similarly situated employees' minimum wage.

54.     At all relevant times, Defendants required Plaintiffs and similarly situated employees to share their tips with employees working as packers and hostesses, without Plaintiffs' and similarly situated employees' written consent or as part of a lawful tip sharing agreement.

55.     At all relevant times, Defendants knowingly and willfully retained a portion of Plaintiffs' and similarly situated employees' tips without Plaintiffs' and similarly situated employees' written consent or as part of a lawful tip sharing agreement.

56.     At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with Time of Hire Notices in their primary languages reflecting rates of pay and payday as well as paystubs that listed the employee's name, the employer's name, the employer's address and telephone number, the employee's rate or rates of pay, any deductions made from employees' wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

57.     At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with statements every payday in their primary languages that accurately listed all of the following: the dates of work covered by that payment of wages;  the employee's name; the name of the employer;  the address and phone number of the employer;  the employee's rate or rates of pay and basis thereof; the employee's gross wages;   the employee's deductions;  allowances, if any, claimed as part of the minimum wage;  net wages; the employee's regular hourly rate or rates of pay; the employee's overtime rate or rates of pay;  the employee's number of regular hours worked, and the employee's number of overtime hours worked.

58.     Pursuant to 12 NYCRR § 146-2.2 and 29 U.S.C. § 203(m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of tip credit.

59.     Defendants knew that the nonpayment of wages for all hours worked and the nonpayment of wages at one and one-half time (1.5x) employees' regular rates would financially injure Plaintiffs and similarly situated employees, and violate state and federal laws.

60.     At all relevant times, Defendants failed to post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, and pay day.

***Plaintiff WEI JIE YU***

61.     From on or about October 10, 2016 to October 28, 2016, Yu was employed by Defendants to work as a sushi chef at Kotobuki-Manhattan.

62.     Throughout his employment, Yu worked:

     a.     Mondays through Thursdays, with either Tuesdays or Wednesdays off, from 11:00 to 15:00, then from 16:30 to 22:00, or nine and one half (9.5) hours per day;

     b.     Fridays and Saturdays from 11:00 to 15:00 and then from 16:30 to 23:00, or ten and one half (10.5) hours per day; and

      c.      On Sundays from 14:00 to 22:00, or eight (8) hours per day.

63.     In total, throughout his employment, Yu worked fifty-seven and one half (57.5) hours per week.

64.     Yu did not receive tips and did not participate in a tip pool.

65.     Throughout his employment, Yu was paid at a rate of seven hundred dollars ($700.00) per week, $350.00 by check and $350.00 by cash.

66.     Yu was paid every Thursday, by check, for the period beginning the previous Sunday and ending the previous Saturday.

67.     Yu was not paid at least the minimum wage for all hours he worked during the week.

68.     Yu was not paid his full overtime rate for all hours worked beyond forty (40) each week.

69.     Yu was not paid spread of hours for all days worked longer than ten (10) hours.

70.     Throughout his employment, Yu was afforded one rest break—between 15:00 and 16:30—Mondays through Saturdays. Yu was not afforded a meal break or a rest break on Sundays.

*Plaintiff SEE LIANG KWA*

71.     From on or about May 6, 2012 through on or about September 30, 2017, Kwa was employed by Defendants to work as a waiter.

72.     During his employment, Kwa worked at three restaurants: Kotobuki-Roslyn, Kotobuki-Hauppauge, and Kotobuki-Manhattan.

73.     Kwa primarily worked out of, Kotobuki-Roslyn, and his paychecks were always in the name of Kotobuki Roslyn, Inc.

74.     However, from time to time, Eric Kim would assign Kwa to work at Kotobuki-Manhattan and Kotobuki-Hauppauge, depending on the needs of the enterprise.

75.     From the beginning of the period of Kwa's employment relevant to this lawsuit through on or about January 1, 2016, Kwa worked 62.75 hours per week:

  a.  From 10:00 through 15:00 (5 hours), then from 16:30 through 23:00 (6.5 hours) (altogether 11.5 hours and a spread of 13 hours), Tuesdays through Thursdays (3 days per week);

  b.  From 10:00 through 15:00 (5 hours), then from 16:30 through 23:30 (7 hours) (altogether 12 hours and a spread of 13.5 hours) on Fridays (1 day per week);

  c.  From 15:00 through 23:30 (8.5 hours and a spread of 8.5 hours) on Saturdays (1 day per week); and

  d.  From 15:00 through 22:45 (7.75 hours and a spread of 7.75 hours) on Sundays (1 day per week).

76.  From on or about January 2, 2016 through on or about September 30, 2017, Kwa worked 46.25 hours per week:

  a.  From 11:00 through 15:15 (4.25 hours), then from 16:30 through 23:00 (6.5 hours) (altogether 10.75 hours and a spread of 12 hours), Tuesdays, Thursdays, and Fridays (3 days per week);

  b.  From 16:00 through 23:30 (7.5 hours and a spread of 7.5 hours) on Saturdays (1 day per week); and

  c.  From 16:00 through 22:30 (6.5 hours and a spread of 6.5 hours) on Sundays (1 day per week).

77.  Throughout the period of Kwa's employment relevant to this lawsuit, he received a base hourly rate of $7.50.

78.  This was below the applicable New York minimum wages ($8.75 in 2015, $9.00 in 2016, and $11.00 in 2017).

79.  Defendants purported to take a tip credit with respect to Kwa's wages, including for his

wages for overtime hours, but they were not entitled to do so.

80.     Kwa was required to spend, and spent, his working days before 12:00, from 16:30 through 17:30, and from 22:00 through 23:00 performing non-tipped side work, including vacuuming, mopping, and sweeping the floor; cleaning the bathrooms; making salads, soups, and coffee; wiping down vacated tables and replacing the place settings (plates, glasses, chopsticks, and forks), filling soy sauce containers at the tables; helping the sushi chef; supplying the kitchen chef; keeping the liquor window stocked; cleaning the front door and front window; and purchasing supplies, including iced tea, from the supermarket. This amounted to both more than 2 hours and more than 20 percent of Kwa's working day.

81.     Further, while Kwa received paystubs with his pay, only some of these paystubs itemized the tip credit.

82.     Finally, Kwa and the other servers contributed their tips to a tip pool, but that tip pool was not limited to workers in traditionally tipped occupations. It was shared with hosts and takeout packers.

83.     Therefore, by purporting to take the tip credit, Defendants did not pay Kwa all the minimum wage, and all the overtime wage, to which he was entitled.

### Plaintiff JOSHI DHARM RAJ

84.     From on or about March 2018 through on or about September 2018, Raj was employed by Defendants to work as a busser at Kotobuki-Manhattan.

85.     Raj worked from 16:00 through 23:00 or 23:30 (between 7 and 7.5 hours) each of his working days, with no fixed time set aside for rest or meal breaks.

86.     Raj worked five days per week (so, between 35 and 37.5 hours) about three out of every four weeks.

87.     Raj worked six days per week (so, between 42 and 45 hours) about one out of every four

weeks.

88.     Throughout Raj's employment, he received a base hourly rate of $8.65, and $15.15 for overtime hours.

89.     This was below the applicable New York minimum wage of $13.00 and $19.50 for overtime hours.

90.     It is equal to the amount of the New York minimum wage less the tip credit.

91.     However, Defendants were not entitled to take a tip credit.

92.     Defendants provided Raj a wage notice that failed to inform him that a tip credit was being taken, or of the amount of tip credit taken.

93.     Accordingly, Raj's regular rate for the purposes of FLSA and NYLL overtime is $13.00.

94.     Raj was not paid 1.5 times this regular rate for overtime hours.

## COLLECTIVE ACTION ALLEGATIONS

95.     Plaintiffs bring this action individually and on behalf of all other and former non-exempt employees, including but not limited to waitstaff, kitchen workers, sushi chefs, dishwashers, hosts, packers, bussers, and cashiers, who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and who were not compensated at least the hourly minimum wage and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

96.     Plaintiffs also bring this action individually and on behalf of non-exempt employees deliverymen who were subject to illegal retention of their tips and who were required to participate in an unlawful tip pool in contravention of 29 U.S.C. §203(m) and (t).

## CLASS ACTION ALLEGATIONS

97.     Plaintiffs bring their NYLL claims pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23, on behalf of all non-exempt personnel employed by Defendants on or after December

31, 2015 (the "Class Period").

98.    All said persons, including Plaintiffs, are referred to herein as the "Class."

99.    The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P 23.

*Numerosity*

100.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

101.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.    Whether Defendant employed Plaintiffs and the Class within the meaning of the New York law;

b.    Whether Plaintiffs and Class members are paid at least the minimum wage for each hour worked under the New York Labor Law;

c.    Whether Plaintiffs and Class members are entitled to and paid overtime under the New York Labor Law;

d.    Whether Plaintiffs and tipped Class members were subject to illegal tip retention;

e.      Whether Plaintiffs and tipped Class members were forced to acknowledge false and inaccurate information on their weekly paystub as a precondition of continued employment;

f.      Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

g.      Whether Defendants maintained policy, pattern and/or practice of failing to provide requisite statutory meal periods;

h.      Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or or timely thereafter;

i.      Whether Defendants provided full and accurate paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiff and the Rule 23 class on each payday; and

j.      At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

***Typicality***

102.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime, and failing to pay spread of hours. Defendants' corporate wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

103.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent representing Plaintiff in both class action and wage and hour employment litigation cases.

*Superiority*

104.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

105.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of the Plaintiff and the FLSA Collective]**

106.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

107.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC § 207(a).

108.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

109.    Defendants' failure to pay Plaintiff and the FLSA Collective their overtime pay violated the FLSA.

110.    At all relevant times, Defendants had, and continue to have, a policy and practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which

violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

111.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

112.    Defendants willfully failed to notify Plaintiff and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff' and FLSA Collectives' labor.

113.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT II.
### [Violation of New York Labor Law—Failure to pay Minimum Wage
### Brought on behalf of the Plaintiff and the Rule 23 Class]

114.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

115.    At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

116.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and the class members for some or all of the hours they worked.

117.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiff, and the class members, for some or all of the hours they worked.

118.    Defendants knowingly and willfully violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

119.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

### COUNT III.
### [Violation of New York Labor Law—Failure to Pay Overtime
### Brought on behalf of Plaintiff and the Rule 23 Class]

120.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

121.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) under NY Wage Theft Prevention Act, and interest.

122.    At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one half times the hourly rate the Plaintiffs and the class are entitled to.

123.    Defendants' failure to pay Plaintiffs their overtime pay violated the NYLL.

124.    Defendants' failure to pay Plaintiffs was not in good faith.

### COUNT IV.
### [Violation of the Fair Labor Standards Act—Unlawful Tip Retention
### Brought on behalf of Plaintiff and the FLSA Collective]

125.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

126.    A tip is the sole property of the tipped employee regardless of whether the employer takes a tip credit.

127.    The FLSA, 29 U.S.C. §§ 203(m) and (t), prohibits any arrangement between the employer and tipped employee whereby any part of the tip received becomes the property of the employer.

128.    Retaining portions of the tips from Kotobuki waiters to unjustly enrich the Owner/Operator Defendants or using portion of the tips to pay non-tipped employees is prohibited under the FLSA.

## COUNT V.
### [Violation of New York Labor Law—Unlawful Tip Retention
### Brought on behalf of Plaintiff and the Rule 23 Class]

129.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

130.    NYLL § 196-d of the New York State Labor Law prohibits employers from demanding, accepting, or retaining, directly or indirectly, any part of an employee's gratuity or any charge purported to be a gratuity.

131.    A charge purported to be a gratuity must be distributed in full as gratuities to the service employees or food service workers who provided the service.

132.    12 NYCRR § 146-2.18 provides that there shall be a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for "service" or "food service," is a charge purported to be a gratuity.

133.    12 NYCRR §146-2.20 provides that when tips are charged on credit cards, the employer must return to the employee the full amount of the tip charged on credit card minus the pro-rated portion of the tip taken by the credit card company.

134.    Employers are prohibited from unjustly enriching themselves by charging their employees a gratuities service fee charge which exceed the costs of converting credit card gratuities into cash.

## COUNT VI.
### [Violation of New York Labor Law—Failure to Pay Spread of Time
### Brought on behalf of Plaintiff and the Rule 23 Class]

135.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

136.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

137.    Defendants' failure to pay Plaintiff spread-of-hours pay was not in good faith.

## COUNT VII.
### [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice Brought on behalf of Plaintiff and the Rule 23 Class]

138.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

139.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL § 195-1(a).

140.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or his first day of employment.

141.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

142.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York

Labor Law. N.Y. Lab. Law § 198(1-b).

## COUNT VIII.
### [Violation of New York Labor Law—Failure to Provide Pay Stubs
### Brought on behalf of Plaintiff and the Rule 23 Class]

143.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

144.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

145.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiff' payday.

146.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law § 198(1-d).

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all the issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

    a)    Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of

issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)      Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiff and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. § 216;

h)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

i)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

j)      An award to reimburse Plaintiff's document out-of-pocket delivery vehicle costs, pursuant to the implied contract which arose between Plaintiff and Defendants;

k)      An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

l)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

m)      The cost and disbursements of this action;

n)      An award of prejudgment and post-judgment fees;

o)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

p)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
        April 16, 2021

TROY LAW, PLLC
*Attorneys for the Plaintiff, proposed FLSA*
*Collective and potential Rule 23 Class*


_____/s/ John Troy_____
John Troy (JT0481)
41-25 Kissena Boulevard, Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
Email: johntroy@troypllc.com

COMPLAINT                                    26 of 26                                    asb